## ·W. DENNISON v. PHI. ALLEN.

A subsequent purchaser from a mortgagor can not be let in to redeem against a purchaser under a judgment on *sci fa.* on the elder mortgage, though not made party to the proceeding.

THIS case was adjourned here for decision from the county of Hamilton. It was a bill in chancery, by the purchase of an equity of redemption, to redeem the mortgaged premises, in the lands of a purchaser under the mortgagee. Various matters were introduced into the bill and answers, which it is deemed unnecessary to state, because the decision turned upon a single point, which arose on the following state of case:

On May 15, 1815, Cyrus Coffin mortgaged the premises in question to P. Allen, as a collateral security for Coffin redeeming certain other grounds previously sold to Allen, subject to a mortgage. On February 2, 1816, Coffin sold and conveyed to Dennison the lot thus mortgaged to Allen, and Dennison took possession. Subsequently, Allen sued a *sci. fa.* against Coffin, on the mortgage, without making Dennison, or the *terre* tenants parties. At May term, 1821, judgment was rendered on the *sci. fa.* in the usual form, for five hundred and fifty-five dollars and fifty-nine cents; and on April 6, 1822, the lot was sold upon execution, and purchased by Allen for three hundred and forty-seven dollars. The other defendants were purchasers under Allen.

Fox, for complainant:

The *scire facias* on a mortgage is in the nature of a bill to foreclose, and is substituted for it, and it seems well settled that no person is bound by a decree of foreclosure, in chancery, except parties to the suit.

*Chancellor Kent, in 3 Johns. Ch. 450, after examining all [496 the authorities upon this subject, says: "The rule, therefore, has been well settled, and uniformly supported, that the subsequent incumbrancers must be parties, and, if omitted, the decree will not bind their rights." "The injustice that would be produced, if they were to lose their rights, because they are not made parties, is very apparent." In the case in Johnson, a mortgage had been made in 1804—a decree of foreclosure was had on this mortgage

September 21, 1815, and a sale made November 23, 1815. But another mortgage was made in March, 1808, and the second mortgagee, not having been made a party to the proceeding to foreclose the first mortgage, was entitled to redeem the property from the *purchaser,* under the decree in 1815.

So it was decided in 15 Johns. 316, that notwithstanding a decree of foreclosure and sale, under the decree, a person having purchased the mortgagee's interest, before the commencement of the foreclosure suit, and not being made a party to the proceedings, *was not affected by the decree of foreclosure and sale under the decree,* but might afterward show that the mortgage on which the decree was founded was void on the grounds of usury.

Again : In 4 Johns. Ch. 606, it is laid down that "all incumbrancers existing at the commencement of the suit must be made parties, or else their *rights will not be affected by the decree and sale thereon.*"

Again : In Hunt and others *v.* Wickliffe, 2 Peters, 215, it was decided that a decree obtained in Kentucky, on a publication made for eight weeks, to bring parties into court, could not bind the parties against whom this publication had been made, because the Supreme Court of that state had decided such publications must be made for two calendar months. Under this construction of the act, the court say : "The heirs of John Floyd were never before the court, and the decree was made against persons who were not parties to the suit. It can not affect them."

In the present case, therefore, admitting that a *scire facias* would lie on such a mortgage, it is contended that, in order to bind other persons interested in the estate mortgaged, they must be made parties to the *scire facias,* in the same manner 497] *as terre-tenants have to be made parties to proceedings at common law, to charge lands in the hands of heirs.

In Nance et al. *v.* Hollenback, 1 Serg. & Rawle, 540, 548, it is decided that any terre-tenant, who has not been served with process on the *scire facias* to foreclose, may, on an ejectment by the purchaser under the judgment, give in evidence anything which might have been given in evidence in the *scire facias* suit.

But the right to redeem, is not only secured by the principles of chancery practice and general principles of law. The statute has provided, in express terms, that nothing in the act shall affect the right of any person or persons, who may set up any claim to such

454

Dennison v. Allen.

mortgaged premises, by purchase from or under the mortgagor or otherwise, and which claim is paramount to the claim of such mortgagee; nor shall anything contained herein be construed to prevent such claimant from availing himself of any defense that the mortgagor *might or could* have set up in bar, or discharge of such mortgage, or of *any fraud or collusion* between the mortgagor and mortgagee."

It does appear to me, therefore, that so far from the statute taking away any rights which others might have in the mortgaged premises, in consequence of any sales made upon any one mortgage, great care has been taken to inform all purchasers under *scire facias* sales, that they can only claim the property subject to the rights of others.

STORER, for respondents:

The provisions of the several acts of the different legislatures of this state, on this subject, are similar in their terms, and were borrowed from the Pennsylvania statute, which was passed in 1705. By section 6 of this act, which was adopted by the governor and judges of the territory northwest of the Ohio, in 1795, and is to be found at page 18 of the Maxwell code, the *scire facias* was only to be served upon " the mortgagor, his executors, or administrators; and that when the premises were sold on execution under a judgment in *scire facias*, the purchaser should hold the same clearly discharged, and freed from all equity and *benefit of redemp- [498 tion, and all other incumbrances made or suffered by the mortgagors, their heirs, or assigns." This, then, was the law of the territory until 1802. In 1802, section 2 of the act then passed "gave to the purchaser the whole title, freed and discharged from all equity and benefit of redemption of such mortgagor." In 1805, the act then passed does not contain the provision just quoted.

The act of 1810 is also silent on the subject, as to any expression of the right of the purchaser to hold the property discharged of the equity of redemption. But the necessary conclusion from the remedy itself, and the right it confers, unquestionably is, that the whole title is passed by the sheriff's sale; and this construction has been adopted by the Supreme Court of this state, in Reedy v. Barget, 1 Ohio, 159. It is there said by the court, " that the object of giving the *scire facias* was to enable the *mortgagee* to resort at once, in one action, to the recovery of his debt and the subjection of his

Dennison *v.* Allen.

landed security to the satisfaction of it. This proceeding enables the mortgagee to obtain judgment for his debt, and execution against the mortgaged premises, at the same time; upon which execution the premises are sold, *discharged of the equity of redemption*, which, without such proceeding, could not be levied upon and sold *upon an execution on a judgment at law.*" This construction is but the history of the practice in this state under these laws.

Under the statute of Pennsylvania, I can find no case, in any of the reports of that state, from Addison down to volume 17 of Sergeant & Rawle, that conveys· the least hint that the junior incumbrancer should be made a party.

The practice seems to be, that the junior lienholder applies to the court for his claim from the surplus moneys arising from the sales of the mortgaged premises, after the elder liens are discharged.

As in Whitehill *v.* Houstan's Ex'rs, cited by Yates, judge, in Blunfield et al. *v.* Buddle et al., 1 Yates, 189: "The premises were sold on a *levari facias*, on the first mortgage, and a surplus of near eighty pounds remained after paying the first mortgage and costs. It was ruled that the second mortgagee might take the money out of court, on giving security."

**499]** *And so in Emlin's Ex'rs *v.* Bogg's Adm'rs, 2 Yates, 167: " The surplus money, arising from land sold under execution on a judgment recovered on a mortgage, after satisfying that judgment, was appropriated to a younger purchase from the mortgagor."

I conclude, then, that the law of 1810 did not require the junior mortgagee, or lienholder, to be made a party to the *scire facias* sued out by the first mortgagee—that the sale on the execution discharges the land of the equity of redemption, no matter in whom the right exists, and the complainant in this bill has no claim to the relief he seeks.

By the COURT:

We conceive that the provisions of our own statute are decisive of this case. By section 2, vol. xxii. 232, it is provided, that on a judgment in *sci. fa.* "a writ of *levari facias* may issue, whereon the mortgaged premises shall be taken in execution and disposed of, in the same manner and under the same regulations that lands and tenements are, or may be, disposed of for the satisfaction of judgments." Conformable to these regulations, the land must be valued by sworn appraisers, must sell for a propor-

tionate part of that valuation, the money must be paid to the sheriff, and the sale must be confirmed by the court, and a deed ordered to the purchaser. Section 4 provides that the proceedings shall not "affect the right of any person or persons who may set up any claim to such mortgaged premises, by purchase from or under the mortgagor, or otherwise, and which claim, in law, shall be paramount to the claim of such mortgagee." There seems no ground of doubt but that the legislature, when they made this provision, intended that interests not paramount to that of the mortgagee, such as interests subsequently derived from the mortgagor, should be concluded by the proceedings on the *scire facias.* We think these two sections, taken together, must be so interpreted as to place the purchaser, at sheriff's sale, under the judgment on the mortgage, in the position occupied by the mortgagor when the mortgage was executed. Any other construction would convert the judicial proceedings authorized by the *law, into a means of practicing fraud on the purchaser. It [500 would discourage bidders at sheriff's sales, lessen public confidence in titles held under sheriff's deeds, and prevent the improvement of lands so held. This seems to have been the construction of the Pennsylvania courts upon a law of similar import. And the same construction appears to have prevailed the Ohio. This is the first bill we recollect filed by a subsequent purchaser from the mortgagor, to be let in to redeem, against a purchaser at sheriff's sale, under a previous mortgage. Had such bills been thought maintainable, we should have heard of them before. The bill must be dismissed.